ALTON F. TUPPER, administrator, *vs.* GRENVILLE L. HAN-
COCK & another, executors.

Middlesex.    November 7, 1945. — January 29, 1946.

Present: FIELD, C.J., LUMMUS, DOLAN, RONAN, & SPALDING, JJ.

*Release. Executor and Administrator,* Individual or representative ca-
pacity, Insolvent estate. *Evidence,* Extrinsic affecting writing.

A general release in absolute and comprehensive terms, given to an ap-
parently insolvent decedent's estate by a creditor, barred the creditor
from sharing in a distribution of new assets which came into the estate
after the giving of the release, even though none of the parties con-
templated the possibility of such assets at the time it was given.
The legal effect of a general release under seal in unequivocal terms could
not be controlled by evidence as to the intention of one of the parties
to the release at the time it was executed.
A general release given by a creditor of a decedent's estate to a named
person "both individually and as administrator of" that estate re-
leased the estate from all claims by the creditor.
The mere fact that, following a general release by a creditor of all claims
against an estate, a distribution was made of the estate in which the
creditor participated, did not preclude the administrator from insist-
ing upon the effect of the release when the creditor later sought to
participate in a distribution of newly discovered assets.

PETITION, filed in the Probate Court for the county of
Middlesex on December 18, 1943.

The case was heard by *Poland,* J.

*J. P. Sullivan,* for Hancock and another, executors.

*C. C. Steadman,* for Stanton and another.

SPALDING, J.   The question here is whether the appellees
Stanton and Mitchell are barred from participating in a
distribution made in the estate of Francis C. Adams by
reason of releases given by them to the administrator of
the estate.   The judge of probate entered a decree that
they were not barred, and the case comes here on the appeal
of the executors of the late Thurber C. Adams, a creditor
and one of the next of kin of Francis C. Adams.   The judge
made no finding of material facts, but there was a report

of the evidence. See G. L. (Ter. Ed.) c. 215, § 12. The relevant facts disclosed by the evidence and not disputed are these: On April 29, 1935, Alton F. Tupper, hereinafter called Tupper, was appointed administrator of the estate of Francis C. Adams, late of Arlington, county of Middlesex. Thereafter, in 1936, Tupper represented the estate as probably insolvent. Stanton and Mitchell were judgment creditors of the estate, and their claims were allowed on May 19, 1938, in the amounts of $1,949.67 and $1,644.25 respectively. (On December 12, 1938, the order of allowance was revoked as to Mitchell's claim and it was allowed in the amount of $874.64.) In June, 1938, the appellees filed a petition in the Probate Court seeking the removal of Tupper as administrator because of his alleged improper conduct in the handling of the estate. Shortly thereafter they also filed a petition asking that Tupper's first account, which had been allowed on May 19, 1938, be reopened for the correction of errors. On November 9 and 10, 1938, Stanton and Mitchell respectively executed and delivered to Tupper releases in substantially the same form, one of which is set forth in the footnote.[1]

On November 21, 1938, on motions of the appellees their petitions to remove Tupper and to reopen the first account were dismissed. On the following day one Kennedy, representing Tupper, turned over to Steadman, an attorney

[1] "Know All Men By These Presents That I, Anne M. Stanton, of Boston, in the County of Suffolk and Commonwealth of Massachusetts, For And In Consideration of the sum of One Dollar and other valuable considerations to me paid by Alton F. Tupper of Arlington in the County of Middlesex, Massachusetts, the receipt whereof is hereby acknowledged, have remised, released, and forever discharged and do hereby, for myself, my Heirs, Executors, Administrators, and Assigns, remise, release, and forever discharge the said *Alton F. Tupper both individually and as administrator of the estate of Francis C. Adams late of said Arlington,* [emphasis added] his Heirs, Executors, and Administrators, of and from all debts, demands, actions, causes of action, suits, dues, sum and sums of money, accounts, reckonings, bonds, specialties, covenants, contracts, controversies, agreements, promises, doings, omissions, variances, damages, extents, executions, and liabilities whatsoever, both in Law and Equity, or which may result from the existing state of things, more especially from his acts and proceedings as administrator aforesaid, I, the said Stanton now have or ever had, from the beginning of the world to the day of the date of these presents. In Witness Whereof I, the said Anne M. Stanton have hereunto set my hand and seal this ninth day of November in the year of our Lord one thousand nine hundred and thirty-eight. Signed and Sealed in presence of Margaret Stanton          Anne M. Stanton"

acting for the appellees, Tupper's personal check for $200. In return for this check Steadman delivered to Kennedy the following receipt: "November 22, 1938 Received of M. F. Kennedy check of Alton F. Tupper for Two Hundred Dollars ($200) in accordance with releases executed by *Ann* Stanton and Arthur F. Mitchell. Chester C. Steadman." In January, 1939, pursuant to an order of the Probate Court, a distribution of slightly less than forty per cent was made to all creditors of the estate (including the appellees) whose claims had been allowed.

In October, 1943, new and further assets in the amount of $3,407.30 came into the Adams estate as a result of distributions from estates of relatives of Adams. These were sufficient to pay in full the claims of all creditors, including those of the appellees, leaving a small balance for the next of kin. The present appeal arises out of a petition for instructions brought in the Probate Court by Tupper to determine whether, in view of the releases mentioned above, the appellees were entitled to participate in the distribution of the additional assets.

The decree appealed from is erroneous.

Although it does not appear in the record that seals as such were attached to the releases, there is a recital in each that it was sealed. This gave the releases the legal effect of sealed instruments. G. L. (Ter. Ed.) c. 4, § 9A. *Glendale Coal Co.* v. *Nesson,* 312 Mass. 293, 294. We thus have general releases under seal which, if free from fraud, are sufficiently comprehensive to bar the claims of the appellees provided they had the legal effect of releasing the estate of Francis C. Adams. No contention is made by the appellees that any fraud or misrepresentation was practised upon them with respect to the releases. Nor do the present proceedings seek to reform them on the ground of mutual mistake. See *Barrell* v. *Britton,* 252 Mass. 504; *Crowley* v. *Holdsworth,* 264 Mass. 303, 308. It may well be that, when the releases were delivered, no one had in mind the possibility that the estate would receive additional assets. But the subsequent acquisition of such assets by the estate did not change the legal effect of the

releases. They contained general and comprehensive language which is not to be limited merely because of the happening of a contingency which might not have been contemplated by the parties when they were executed. *Radovsky* v. *Wexler,* 273 Mass. 254, 257. *Willett* v. *Herrick,* 258 Mass. 585, 595. *Klopot* v. *Metropolitan Stock Exchange,* 188 Mass. 335, 337. Where, as here, the releases were absolute and unequivocal in their terms, they cannot be explained by parol evidence and must be construed according to the language that the parties have seen fit to use. *Commissioner of Corporations & Taxation* v. *Hale,* 315 Mass. 556, 559. *Miller* v. *Gane,* 288 Mass. 57, 58. If any existing liability was intended to be excepted, it should have been expressly set forth in the releases. *Radovsky* v. *Wexler,* 273 Mass. 254, 258. *Deland* v. *Amesbury Woollen & Cotton Manuf. Co.* 7 Pick. 244, 246. We need not discuss the evidence which was introduced in the court below with respect to Tupper's intentions at the time the releases were executed. The unexpressed intent of one of the parties cannot control the legal effect of what was done. *Quirk* v. *Smith,* 268 Mass. 536, 543. *Gold* v. *Boston Elevated Railway,* 244 Mass. 144, 147.

The crucial question, therefore, is whether the instruments under consideration released the estate of Francis C. Adams or merely discharged Tupper in his individual capacity. We are of the opinion that they released the estate. It is to be noted that each release discharged "the said Alton F. Tupper *both individually and as administrator of the estate of Francis C. Adams*[1] . . . *of and from all* debts," and so forth. To construe this language as meaning that only Tupper in his individual capacity was released would require us to treat the words "as administrator of the estate of Francis C. Adams" as surplusage. "It is a canon of construction that every word and phrase of an instrument is if possible to be given meaning, and none is to be rejected as surplusage if any other course is rationally possible." *National Shawmut Bank* v. *Joy,* 315 Mass. 457,

---

[1] Emphasis supplied.

466. Applying this rule here, we think the foregoing expression used in the releases meant that the appellees were releasing Tupper in his individual capacity and also the estate through him as its legal representative. See *Merrifield* v. *Baker*, 11 Allen, 43. The appellees' contention is that the estate is not released unless express words to that effect, such as "estate of Francis C. Adams," appear in the release. While it is true that sometimes such expressions may be found in releases affecting estates (see *Glendale Coal Co.* v. *Nesson*, 312 Mass. 293, 294; *Merrifield* v. *Baker*, 11 Allen, 43), yet the absence of those words is not fatal if the intention to release the estate otherwise sufficiently appears. The fact that the question of the releases was not raised at the time of the earlier distribution does not prevent it being raised now.

Considerable reliance is placed by the appellees on two cases (*Manning* v. *Osgood*, 151 Mass. 148, and *Fessenden* v. *Gunsenhiser*, 278 Mass. 213) construing writs in actions brought against administrators. These decisions were explained in *Coldwell* v. *New England Trust Co.* 282 Mass. 45, and are not at variance with the conclusion here reached. Indeed, the *Coldwell* case tends to support it. That case holds that where an action is begun by a writ of summons, without an order to attach goods and estate, and the declaration discloses that the cause of action was based on the liability of the decedent, a description of the defendant in the writ as "The New England Trust Company . . . as it is Administrator of the estate of Robert Alonzo Miner" was sufficient to bring Miner's estate, rather than the administrator in its individual capacity, into court. See also *Yarrington* v. *Robinson*, 141 Mass. 450.

It follows that the decree of the Probate Court must be reversed and a new decree is to be entered in which the appellees are not to be included in the distribution.

*So ordered.*