MYER SILVERMAN *vs.* ABRAHAM STEINBERG & others.

Suffolk.   May 3, 1949. — June 6, 1949.

Present: QUA, C.J., DOLAN, RONAN, SPALDING, & WILLIAMS, JJ.

*Gift.   Personal Property,* Ownership.   *Duress.*

A decree dismissing a bill in equity by a son to establish ownership in certain bank accounts, one in the name of the plaintiff's father as trustee for the plaintiff, one in the plaintiff "or" the father, and a third in them jointly or the survivor, and to set aside, because of alleged duress, assignments of them by the plaintiff to the executors of the father's will, was affirmed where the trial judge on evidence not reported found that the father did not intend to create a present interest in or to make a gift to the plaintiff, and that the assignments were made voluntarily because the plaintiff "felt that the funds belonged to his father and not to him," and were "not induced by fraud, threats, fear or other improper influence."

BILL IN EQUITY, filed in the Superior Court on December 3, 1947.

The case was heard by *Brogna,* J.

In this court the case was submitted on briefs.

*F. I. Rose,* for the plaintiff.

*S. T. Lakson,* for the defendants.

SPALDING, J. The plaintiff seeks by this bill in equity to establish his ownership in three bank accounts and, because of alleged duress, to set aside assignments of them made by him to the defendants as executors of the will of his father, Max Silverman. From a final decree dismissing the bill, the plaintiff appealed.[1] The judge made voluntary findings of fact, which appear to have been intended as a complete statement of the facts that influenced him to his decision. Compare *Birnbaum* v. *Pamoukis,* 301 Mass. 559, 561–562. The evidence is not reported. Thus the question is whether facts found support the decree. *Turner* v. *Morson,* 316 Mass. 678, 681. *Chapin* v. *Ruby,* 321 Mass. 512, 513.

Pertinent findings of the judge and facts admitted in the pleadings are as follows: The plaintiff, who is forty-nine years of age, is the son of the late Max Silverman (hereinafter sometimes called Silverman), with whom for about thirty years prior to the latter's death on October 31, 1947, he had been in business "under a rather loose financial arrangement." Silverman was survived by two daughters, three sons, eight grandchildren, and four great grandchildren. Silverman made a will on March 14, 1946, in which his son, the defendant Harry Silverman, and the defendants Steinberg and Burofsky, his sons-in-law, were named executors. Under his will Silverman left his business to the plaintiff and "all the property connected therewith, excepting any bank accounts used in the conduct of the business and excepting any funds in any bank then or thereafter used by or in connection with the business." At the time the will was made Silverman "had the funds in banks which later were deposited in the three bank accounts in dispute." Neither at that time nor when he died could the bequests made by him have been paid unless

---

[1] The final decree also ordered the dismissal of the defendants' counterclaim, but it need not concern us since the defendants did not appeal from the decree.

the funds here involved belonged to his estate. "In January and March, 1947, the plaintiff got his father to put his savings in the three bank accounts in dispute." One was in the name of Max Silverman as trustee for Myer Silverman; another was in the name of Max Silverman or Myer Silverman; and a third was in a joint account in the names of Max and Myer Silverman and the survivor. "In so doing . . . Silverman did not intend to create a present interest in nor to make a gift to his son Myer; . . . he retained full and unrestricted dominion over the funds and . . . thereafter continued to consider them as his property." No gift of any interest in the funds was made to the plaintiff. The funds belonged to Silverman's estate. By instruments under seal dated November 5, 1947, the plaintiff assigned all his "title and interest" in the three accounts to the defendants as executors of Silverman's estate.[1] In making the assignments, the plaintiff did not intend to, and did not in fact, make a gift of them to the estate. The assignments were made voluntarily and were "not induced by fraud, threats, fear or other improper influence." Rather they were made because the plaintiff "felt that the funds belonged to his father and not to him."

The decree was right.

The plaintiff's bill, as amplified by specifications, alleged that the funds in the three accounts represented in whole or in part the plaintiff's earnings over many years; that these funds were retained by Silverman for his (the plaintiff's) benefit; and that he was induced to execute the assignments to the defendants by duress and coercion exercised by his sister Ethel Burofsky and the defendant Steinberg. The findings of the judge, however, do not sustain these allegations. The plaintiff's contention that the assignments were given under mutual mistake requires no discussion. It may be doubted whether relief on that

---

[1] The allegations in the plaintiff's bill, by which he is bound (G. L. [Ter. Ed.] c. 231, § 87), incorporate by reference the assignments, and they show that each contained a recital that it was sealed. See G. L. (Ter. Ed.) c. 4, § 9A; *Tupper* v. *Hancock*, 319 Mass. 105, 107.

ground is within the scope of the bill. But however that may be, there are no findings which would warrant relief either on that ground or on any other.

*Decree affirmed with costs.*