## BALTIMORE TRANSIT COMPANY *v.* HARROLL

[No. 243, September Term, 1957.]

*Decided May 26, 1958.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*James J. Doyle, Jr.,* with whom were *Theodore Sherbow*
and *Sherbow & Sherbow* on the brief, for the appellant.

*Bernard W. Rubenstein* for the appellee.

HAMMOND, J., delivered the opinion of the Court.

We are called upon to determine the true relationship be-
tween an agreement by an employer to furnish medical care
to injured or sick employees and certain provisions of the
Workmen's Compensation Act. The Baltimore Transit Com-
pany and the union representing its employees entered into
a collective bargaining agreement. Article 17 of the agree-

ment provided *inter alia* that the company would furnish the services of physicians and surgeons if an employee elected to avail himself of them, and if an employee resided where company doctors did not practice, the company would pay a stipulated fee to any doctor used. If surgery was indicated, a company surgeon must be used. If the employee required hospitalization, the company was to pay specified ward rates, for operations and the cost of any necessary or customary hospital services.

The appellee Harroll, who had worked for the company for many years, was injured while driving one of its buses because of the negligence of a third person. The family doctor called in Dr. Walter Wise, head surgeon of Mercy Hospital, and Harroll was admitted to that hospital for treatment. After he was discharged from the hospital, he applied for and received workmen's compensation payments from the insurance carrier of the company. Claim was made against the negligent third person, a settlement was reached, and the insurance carrier was repaid the compensation it had paid Harroll, and $423.70, the amount of the hospital and doctors' bills it had paid.

Harroll filed suit against the company for the recovery of the $423.70. He conceded below, as he did here, that payment of the medical and hospital expenses by the company's insurance carrier was payment by the company, but argued that any reimbursement from the tortfeasor belonged to him and not to the company. Judge Mason, hearing the case without a jury, held that Harroll's rights and the company's liability were as "* * * in a case not growing out of compensation disability" and gave judgment for Harroll.

The company concedes that Dr. Wise is a company surgeon and that Mercy Hospital rates are payable if the contract is applicable, but it argues that Article 17 does not apply to cases of compensable injury. It sought to prove that the established practice before and since the collective bargaining agreement was to treat compensation cases by procedures completely different from cases of injury not arising in the course of employment and cases of sickness, in that the former were handled by one department and both of the latter by an-

other. It proffered evidence that the collective bargaining agreement was intended to embody the existing practices.

Harroll, although expressly conceding that the company need not furnish hospital and medical care twice—that is, both under the compensation act and under the contract—argues earnestly that the payments made in his case were made under the contract and that the company had no right of subrogation to recoup them. He says that the words of the agreement are plain and unambiguous, that intent must be gathered solely from those words, that the agreement applies to cases of injury arising out of employment so that in such cases payment of hospital and medical expenses is by virtue of the contract, and that the coverage of the agreement is analogous to that of accident and health policies, which do not merely indemnify but are investment policies which permit both retention of payments made under them and recovery of damages from the negligent third person who brought about the injury. Harroll finds support for his argument that the contract requires payment of hospital and medical expenses in compensation cases in the absence from that part of Article 17 that deals with the obligation to furnish such services of any qualifications or limitations whatever, while in other sections of the same article it is provided that death benefits are not to be paid in cases in which a claim for damages or compensation is asserted against the company under present or future law, and in still another that employees or pensioners who have hospitalization insurance must apply the insurance proceeds towards payment of hospital expenses, as far as they will go. In effect, Harroll says the company, in the instant case, did not pay the hospital and medical expenses as it had expressly agreed it would, because it obtained reimbursement from the tortfeasor and, therefore, it must pay, and he is the payee under the agreement.

There are significant indications that Article 17 of the agreement was to complement the compensation act and not to supplement or supplant it in any respect. It would be entirely competent for the parties by express contract to supplement the benefits under the Act or to relax its restrictions or requirements in favor of the employees. *2 Larson, Work-*

*men's Compensation Law,* Sec. 97.61; *Sharp v. Foley Brothers,* 69 N. Y. S. 2d 514. However, in the provisions of Article 17, dealing with the furnishing of hospitalization and medical treatment, there is nothing to indicate that the parties were doing more than to make applicable to non-compensable injuries and to sicknesses most of the obligations the law imposed on the company in favor of the employees in cases of compensable injury. Code, 1957, Art. 101, Sec. 37 (a), in force when the agreement was signed, provides that in addition to the compensation provided by the Act, "* * * the employer shall promptly provide for an injured employee such medical, surgical or other attendance or treatment, nurse and hospital services, medicines * * * as may be required by the Commission." The provisions of Article 17 of the agreement do not refer to the compensation law, but the parties must be deemed to have entered into the contract with knowledge of its requirements and it would seem that the company was agreeing to do something more than it was already legally obligated to do, that is, to provide hospitalization and medical care for non-compensable injury and for sickness. Other provisions of Article 17 of the agreement lend support to this conclusion. It is entitled "Welfare", which does not suggest that it is to deal with compensation cases. It provides that hospitalization, dental care, group life insurance, and death benefits are to be furnished pensioners as well as employees, and pensioners are not covered by the compensation act. To some extent the agreement may be more restrictive than the compensation statute because the statute seemingly permits the injured employee to use any doctor or surgeon while the agreement limits him primarily to company doctors and entirely to company surgeons.

If, however, it be assumed that Harroll is right in his contention that Article 17 is broad enough in terms to require the company to furnish free medical and hospital care in cases to which the compensation law could apply, it does not follow necessarily that he is entitled to prevail. He may well be on sound ground in saying that the contractual rights given an employee by Article 17—whatever they may be—both entitle him to receive from the company free hospital and medi-

cal services and permit him to retain the cost of such services if the law allows him to recover them from a negligent third person. The benefits given employees by Article 17 are like those paid by accident and health insurance policies, and the insurer who pays such benefits is not an indemnitor entitled to subrogation, unless a statute or a contract provision expressly makes him one. *Crab Orchard Improvement Co. v. Chesapeake & O. Ry. Co.* (4th Cir. 1940), 115 F. 2d 277, 281; *Suttles v. Railway Mail Ass'n.,* 141 N. Y. S. 1024, 1025; *Gatzweiler v. Milwaukee Electric Ry. & Light Co.* (Wis.), 116 N. W. 633; 46 *C. J. S., Insurance,* Sec. 1209 (b) (1) at 157; 29 *Am. Jur., Insurance,* Sec. 1340. Where there is no specific provision in a compensation law making an employer an indemnitor with a right of subrogation, the courts have held that he has no such right as to compensation or expenses paid to, or for the benefit of, the injured employee, and that the employee may recover both compensation from his employer and damages from a third person. *Crab Orchard Improvement Co. v. Chesapeake & O. Ry. Co., supra,* and cases therein cited; *Newark Paving Co. v. Klotz* (N. J.), 91 A. 91; *Hotel Equipment Co. v. Liddell* (Ga. App.), 124 S. E. 92; *Mercer v. Ott* (W. Va.), 89 S. E. 952; 38 Harv. L. Rev. 971. Further, a negligent third person, otherwise liable to Harroll, could not avoid payment of hospital and medical expenses by showing that they had been furnished by his employer, without expense to him. *Plank v. Summers,* 203 Md. 552.

It may well be that if Harroll had elected (a) to claim the furnishing of medical care under the terms of Article 17 of the agreement—the article says it is to be made available "should an employee elect to avail himself thereof"—and (b) to proceed only against the tortfeasor for damages and not against his employer by claiming and accepting compensation, he could have retained the damages payable by the tortfeasor, including the value of the hospital and medical care furnished him free by the company. But he did not do this. He claimed and accepted compensation from his employer, and we think that when he invoked the benefits given him by the compensation statute, his election imposed on him the burden of the

Act as well, and that one of the statutory burdens, from the point of view of the employee, is that the employer and not the employee is entitled to retain any medical and hospital expenses recouped from a tortfeasor.

The statute gives Harroll a choice of roads. Code, 1957, Art. 101, Sec. 58, provides that where injury or death for which compensation is payable occurs under circumstances creating a legal liability in a person other than the employer, the employee "* * * may proceed either by law against that other person to recover damages or against the employer for compensation under this article * * *" and says that if compensation is awarded or paid, the employer may enforce the liability of the tortfeasor and keep the amount of the compensation already paid and the amount of medical and hospital services paid for before paying any excess to the injured employee. It goes on to provide that if an employer shall not, within two months from the passage of an award, start proceedings to enforce the liability of a third person, the injured employee may enforce the liability of such other person, provided, "that * * * the employer * * * shall be reimbursed for the compensation already paid or awarded and any amount or amounts paid for medical or surgical services * * * or for any of the other purposes enumerated * * *." In *Barrett v. Indemnity Insurance Co.,* 152 Md. 253, 259, Judge Offutt said for the Court: "The statute gave Mrs. Shilling the right to elect whether she would proceed at law against the tort feasor to recover damages, or against the employer to recover compensation * * * but *except in the manner provided by the statute* she could not do both. And when she claimed and received compensation from the employer and the insurer, she could thereafter proceed only against the intervening *tortfeasor,* whose act caused the death of her husband *in compliance with the terms of the statute* * * *." The opinion went on to say that the statute provides "* * * a special statutory remedy, and the rights of all persons affected by the proceedings are, so far as they are applicable, *measured and limited by the terms of the statute.*" (Some emphasis supplied.) See also *Johnson v. Miles,* 188 Md. 455, 460.

After Harroll had elected to receive compensation, his right to proceed against the tortfeasor who had caused the harm was "measured and limited" by the provisions of the compensation act. An express limitation of the Act is that the monies paid by the tortfeasor must first be applied to make the employer whole for the compensation and medical and hospital expenses he had paid, and only the excess goes to the employee.

We cannot read Article 17 as requiring the company to pay over to an employee the hospital and medical expenses it has received from a tortfeasor. If the parties had so intended and had clearly expressed that intent, they could have agreed that any such expenses recouped by the employer and made his by the statute, must be given by him to the injured employee, but the provisions of Article 17 fall far short of such an agreement, as we read them. They may go as far, as we have suggested, as to permit an employee to retain what the law allows him to collect from a negligent third person, but they do not say that the company agrees to pay over to the injured employee, to whom it has furnished the free hospital and medical care guaranteed by the statute and the agreement, the money the statute has given it as its own. We think the decision of the lower court should have been for the appellant, and that the judgment must be reversed.

*Judgment reversed, with costs.*