## THOMAS v. ERIE INSURANCE EXCHANGE
[No. 347, September Term, 1961.]

*Decided July 10, 1962.*

334

The cause originally was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and SYBERT, JJ., and re-argued before the full Court.

*Harold Buchman* (on both arguments), with whom were *Robert R. Bright* and *Lawrence B. Coshnear* on the brief, for the appellant.

*Thomas G. Andrew* (on both arguments), with whom were *Rollins, Smalkin, Weston & Andrew* on the brief, for the appellee.

MARBURY, J., delivered the opinion of the Court.

On August 16, 1959, Rosa Thomas, the appellant and plaintiff below, while riding as a passenger in an automobile owned and operated by William O. Miller, insured by Erie Insurance Exchange (Erie), appellee and defendant below, sustained serious injuries and incurred hospital and medical expenses for treatment in the amount of $1831.50 when the automobile in which she was riding as a passenger struck a utility pole. She filed a suit in the United States District Court against Miller to recover damages for her personal injuries arising out of the accident allegedly caused by the negligence of the insured. The case was settled prior to trial and the appellant executed a paper entitled Release in Full, on December 2, 1960, which stated that in consideration of $15,000, she released:

> "William O. Miller, his heirs, executors, administrators, agents and assigns, and all other persons, firms or corporations liable or who might be claimed to be liable, none of whom admit any liability to the undersigned but all expressly deny any liability, from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever, and particularly on account of all injuries, known and unknown, both to person and property, which

have resulted or may in the future develop from an accident which occurred on or about the 16th day of August, 1959, at or near Red Lion, Pennsylvania."

The release also declared:

"* * * that the terms of this settlement have been completely read and are fully understood and voluntarily accepted for the purpose of making a full and final compromise adjustment and settlement of any and all claims, disputed or otherwise, on account of the injuries and damages above mentioned, and for the express purpose of precluding forever any further or additional claims arising out of the aforesaid accident."

Following settlement of her suit against Miller, the appellant requested Erie to pay her medical expenses in accordance with the medical pay clause of the insurance policy issued by Erie to Miller. By the medical pay provision, for which Miller paid a separate premium, Erie undertook

"to pay all reasonable expenses incurred within one year from the date of accident for necessary medical, surgical, X-ray * * *, ambulance, hospital * * * services * * * to or for any person who sustains bodily injury caused by accident * * * while occupying the owned automobile while it is being used by the named insured * * *."

Upon the refusal of Erie to pay her in accordance with the medical pay provision, the appellant filed this suit. Both parties submitted the case to the court below without a jury on the pleadings, admissions of fact, agreed stipulations of counsel, and without testimony. From the judgment in favor of Erie for costs the appellant appealed.

The facts which were stipulated by counsel were as follows:

1, Appellant qualified as a beneficiary under the medical pay clause of appellee's policy and was eligible to recover the policy limit of $1,000 for payment of her hospital and medical expense; appellee denied her right to recover solely by reason of the release.

2, The medical pay provision called for a premium from the insured separate and apart from the premium for liability coverage, and constituted a direct contractual obligation by the appellee to pay the appellant's hospital and medical bills.

3, There was no discussion between the parties or their counsel during settlement negotiations, or at any time before settlement and the execution of the release, concerning a claim under the medical pay clause of Miller's policy.

4, The appellant, were she present to testify at the trial, would state under oath that she did not contemplate or consider a claim under the medical pay clause at the time she executed the release, and had no intention to release such claim by signing the release.

5, The personal injury suit, filed by the appellant against Miller, alleged only the negligence of Miller, and was instituted to recover damages, which included among other things her hospital and medical expenses; this suit was settled, and payment was made by the check of the appellee.

6, The appellee was not specifically named in the release, and the check, issued by the appellee in settlement of the case, did not make any allocation or reference to the medical pay clause of the policy or to medical expenses, and

7, That the appellant admitted that all of the medical expenses alleged in the declaration in this suit were alleged as special damages by her in the course of negotiations for settlement of the suit instituted by her in the United States District Court against William O. Miller.

This case is one of first impression in Maryland and presents the question of whether the broad terms of the general release executed by the appellant under the facts and circumstances of this case were sufficient to comprehend settlement of both Miller's tort liability and the medical pay clause of the policy issued by Erie to Miller, so as to bar recovery under the medical pay clause in a subsequent suit by the appellee against the insurer.

The appellant contends that the payment of $15,000 by Erie as consideration for the release was entirely under the bodily injury liability section of the policy and that she is entitled separately to be paid for medical expenses under the medical

pay coverage section of the policy as well. For the purposes of this opinion we will assume that she had a right to double recovery, that is by way of special damages for her medical expenses under the tort liability provision of the policy and also under the medical pay clause. The majority of the courts which have considered the problem have recognized the right to double recovery. *Severson v. Milwaukee Auto. Ins. Co.* (Wis.), 61 N. W. 2d 872; *Truitt v. Gaines* (U. S. D. C., Del.), 199 F. Supp. 143; *Distefano v. Delta Fire & Casualty Co.* (La.), 98 So. 2d 310, 42 A.L.R. 2d 983; 8 Appleman, *Insurance Law & Practice,* § 4890, p. 349; *contra Hawayek v. Simmons* (La.), 91 So. 2d 49; cf. *Baltimore Transit Co. v. Harroll,* 217 Md. 169, 175, 141 A. 2d 912; and *Plank v. Summers,* 203 Md. 552, 556, 102 A. 2d 262.

The appellant argues that she has not yet received any compensation under the medical pay coverage and that when she executed the release she did not intend thereby to surrender any of her rights under the second coverage. The appellee contends that a double recovery has already taken place in the settlement for $15,000 and that the release was a discharge of all claims, including any under the medical pay clause.

The trial judge ruled that the words "all other persons" as set forth in the release included Erie, although the latter was not named specifically in the release. We agree. Broader or more comprehensive language is unlikely to be found in a general release. The appellant admitted that had the release contained the words "all other persons including Erie Insurance Exchange" in lieu of "all other persons" she would have no claim under the medical pay clause. To agree with her would involve a mere exercise of semantics which we can not find to be justified. Cf. *Glass v. Doctors Hospital,* 213 Md. 44, 131 A. 2d 254; and *Tupper v. Hancock* (Mass.), 64 N. E. 2d 441. The appellant stipulated that she knew the check she was getting was from the insurance company, that all of the medical expenses now being claimed were alleged as special damages by her in the course of negotiations for the settlement which was consummated by the release in question. She knew, of course, that any claims that she had arose

out of injuries resulting from the accident of August 16, 1959.

Likewise without merit is her claim that the words of the release "liable or who might be claimed to be liable * * * on account of all injuries" could not include Erie because it was not directly liable to the insured appellant except for the medical pay clause. While it is true that the absence of a direct action statute, as in Maryland, precludes a litigant from bringing suit directly against the insurer, nevertheless the liability of the insurer still exists under the policy. Moreover, the reason that the appellee was not a party to the suit in the negligence case was because it would not have been a proper party defendant. The mere fact that Erie was liable under two contractual provisions of the policy did not prevent the parties in negotiating the settlement from including in a single general release all claims against the insurance company so that both claims were properly subjects of the negotiated settlement. *Barbour v. State Farm Mutual Automobile Ins. Co.* (D. C.), 141 A. 2d 924.

In *Barbour* an action was brought by the mother of one injured in an accident to recover for medical expenses under the medical pay coverage of an automobile liability policy. The Municipal Court of Appeals sustained a finding that the release which the mother had executed included the claim for medical expenses and not merely the claim for injuries. In that case the release specifically named the insurer, and the payment check apportioned the sum paid between the bodily injury and medical payment coverages. We do not read that opinion as intimating that the result would have been different had not the insurance company been named in the release and the check not apportioned the settlement between the two claims. The court in arriving at its decision found the absence of fraud or misrepresentation in the procurement of the release, and that the claimant was represented by competent counsel. It concluded that "if she intended to preserve her rights under the medical payments provision, she should have inserted appropriate language to that effect."

In the instant case the facts set out in the pleadings and stipulations do not allege or indicate any mutual mistake or

that the release was obtained by misrepresentation, over-reaching or fraud in the procurement of the release. There is nothing to indicate bad faith on the part of the appellee to show that it knew or suspected that the appellant did not fully understand the import and effect of the paper she signed. There was no duty imposed on the appellee to explain the effect of the release when she had ample opportunity to read the instrument, capacity to understand it, and was represented by counsel during the negotiations when her special damages for medical expenses were discussed. She is chargeable with her own carelessness or failure to appreciate the legal effect of the instrument she signed. *Glass v. Doctors Hospital, supra; Ray v. Eurice,* 201 Md. 115, 93 A. 2d 272; *Spitze v. B. & O. R. R. Co.,* 75 Md. 162, 23 Atl. 307; *Tupper v. Hancock, supra;* 3 Appleman, *Insurance Law & Practice,* § 1711; 2 Black, *Rescission and Cancellation* (2d ed.) §§ 382-385; 3 Corbin, *Contracts,* § 574, note 16. Cf. *Vincent v. Palmer,* 179 Md. 365, 19 A. 2d 183; *Arthur v. Morrow Brothers,* 131 Md. 59, 101 Atl. 777.

The case of *Buckley v. Basford* (U.S. D.C., Me.), 184 F. Supp. 870, relied on by the appellant is distinguishable from the case at bar. In that case the court held that the release did not cover the plaintiff's claim for contribution against the defendant when the plaintiff was sued by a passenger for injuries, and he entered a claim over against the defendant for contribution as a joint tort-feasor. The court there reasoned that the document was ambiguous on its face because it did not expressly mention claims for contribution, and the claim was not within the contemplation of the parties when the release was signed. But in that case the court also found that the consideration for the release was the exact amount of actual out-of-pocket expenses incurred by the defendant and his wife, the release was executed only nine days following the accident, without benefit of counsel, and at that time a claim for contribution was not contemplated.

In this case the situation was quite different. A suit had been brought in the United States District Court and settlement of that suit was negotiated, the release executed more

than a year following the accident involved, and the appellant was represented by counsel. The appellant relies heavily upon the stipulation that if she had been present she would have testified that she did not intend to absolve the appellee from liability under the medical pay clause of the policy when she signed the release. This claim by her at best could only be considered as a unilateral mistake brought on by her own carelessness.

Williston, *Contracts* (Rev. ed.) § 1577 — says as to unilateral mistake, quoted with approval in *Ray v. Eurice, supra:*

> "But if a man acts negligently, and in such a way as to justify others in supposing that the terms of the writing are assented to by him and the writing is accepted on that supposition, he will be bound both at law and in equity. Accordingly, even if an illiterate executes a deed under a mistake as to its contents, he is bound if he did not require it to be read to him or its object explained."

We hold that the release here involved was plain, unambiguous and by its broad terms barred all subsequent claims theretofore existing between the contracting parties, so that the trial judge was correct in entering judgment for the appellee.

*Judgment affirmed, with costs.*

HENDERSON, J., filed the following dissenting opinion, in which HAMMOND, J., concurred.

I do not agree that the release in this case barred recovery on the medical payments claim against the Insurance Company. In effect, the insurer executed two contracts, one to defend or indemnify the insured against liability for damages recoverable by an injured party by reason of the insured's negligence, and another, for a separate premium, to pay directly to a passenger, as a third party beneficiary, any medical expenses incurred up to $1,000, regardless of negligence. The cases recognize that there can be a double recovery on each separate undertaking. See *Severson v. Milwaukee Auto. Ins.*

*Co.,* 61 N. W. 2d 872 (Wis.); *Truitt v. Gaines,* 199 F. Supp. 143 (D.C. Del.); note 42 A.L.R. 2d 983. In 8 Appleman, *Insurance Law & Practice* § 4896, p. 349, it is said that since recovery under a medical payments clause "is completely independent of liability on the part of the insured, insurance under the medical indorsement clause is closely akin to a personal accident policy." Thus, if the suit against the insured had been pressed to judgment, and the judgment paid, this would not have barred another recovery under the clause sued on. Cf. *Baltimore Transit Co. v. Harroll,* 217 Md. 169, 175, and *Plank v. Summers,* 203 Md. 552, 556.

The majority opinion relies upon the generality of the language of the release. It is a question of the intent of the contracting parties, based not solely on the words employed but upon the surrounding circumstances. See Williston, *Contracts,* (Rev. ed.) § 1825; Restatement, *Contracts* § 403 comment (a).

It should be borne in mind that the whole suit against the insured was predicated upon the negligence of the insured and the insurer was not a party thereto. The language of the release as to other persons "liable or who might be claimed to be liable * * * on account of all injuries" could not fairly include the insurer who was not directly liable to the injured party, except under the medical payments claim. The settlement of the pending suit would not in and of itself affect the insurer's independent undertaking. At least, I find the phrase sufficiently ambiguous to justify its restriction to the cause of action which was the subject of settlement. I find support for this view in the cases of *Butcher v. United Elec. Coal Co.,* 174 F. 2d 1003 (C.A. 7th), and *Buckley v. Basford,* 184 F. Supp. 870 (D.C. Me.) See also 76 C.J.S. *Release,* § 51, p. 697, and 45 Am. Jur. *Release,* § 28, p. 693. Moreover, it is stipulated that the medical payments clause was never discussed in connection with the settlement, and that the appellant if present would testify she had no intention of releasing it. There was at least a unilateral mistake, and a not unreasonable one under the circumstances.

Both sides rely upon the case of *Barbour v. State Farm*

*Mutual Automobile Ins. Co.,* 141 A. 2d 924 (D. C. Mun. Ct. of A.). While that case is closely in point the court, in sustaining the effectiveness of a general release, relied strongly upon the fact that the release specifically named the insurer, and that the settlement check specifically apportioned the sum paid between the bodily injury and medical pay coverages. Neither of these facts exist in the case at bar, and as I read the *Barbour* case, in the absence of these factors, the decision would have been otherwise.

Judge Hammond authorizes me to say that he concurs in the views here expressed.