Joseph **NELSON** and **Robert Minor Smith**

v.

**VICTORY ELECTRIC WORKS, INC.**

**Civ. A. No. 13716.**

United States District Court
D. Maryland.

March 10, 1964.

See also D.C., 210 F.Supp. 954.

I. Irwin Bolotin and Philip J. Lesser, Lesser & Lesser, Kensington, Md., for plaintiffs.

John A. Beck and John J. Pyne, Bethesda, Md., for defendants.

R. DORSEY WATKINS, District Judge.

This is a suit by the plaintiffs (hereinafter Nelson and Smith) against the defendant, their employer (hereinafter Victory) to recover moneys allegedly due and to become due under the provisions of a collective bargaining agreement entered into on June 25, 1959 between United Brotherhood of Carpenters and Joiners of America (hereinafter Union) and Victory. This agreement provided that Victory would "carry an excess compensation policy on his employees when they are working outside of the District of Columbia which shall give the employees * * * additional compensation in Maryland and Virginia equal to that of the District of Columbia."

The underlying facts have all been stipulated.

Nelson and Smith, while employed by Victory and while working for Victory, sustained accidental personal injuries arising out of and in the course of their employment. Each received an award from the State Industrial Accident Commission, under which (to October 29, 1963):

Nelson had received under the Maryland Award:

| | |
|---|---|
| Temporary total disability | $ 880.00 |
| Temporary partial disability | 200.00 |
| Permanent partial disability | 1,875.00 |
| | $2,955.00 |

Under the District of Columbia Compensation Act, his compensation would have been:

| | |
|---|---|
| Temporary total disability | $1,188.00 |
| Temporary partial disability | 200.00 |
| Permanent partial disability ($15.00 a week from April 25, 1961 to October 29, 1963) | 1,965.00 |
| | $3,353.00 |

Plus "excess benefits" payable at $15.00 per week, or $780.00 per year, until a total of $17,280 is paid. Nelson is fifty-eight years old and has a life expectancy of nineteen years, or $14,280 based on life expectancy.

Smith had received under the Maryland award:

| | |
|---|---|
| Temporary total disability | $ 640.00 |
| Permanent partial disability | 3,125.00 |
| | $3,765.00 |

Under the District of Columbia Compensation Act, his compensation would have been:

| | |
|---|---|
| Temporary total disability | $ 864.00 |
| Permanent partial disability ($25.00 per week from November 21, 1960 to October 29, 1963) | 3,825.00 |
| | $4,689.00 |

Plus "excess benefits" payable at $25.00 per week, or $1,300.00 per year, until a total of $17,280.00 is paid. Smith is forty-six years old and has a life expectancy of twenty-seven years.

Jurisdiction is based upon diversity of citizenship, Nelson and Smith being residents and citizens of the District of Columbia, and Victory being a corporation with its principal place of business in

Louisiana, but which had been doing business in Maryland. The "contract" allegedly involved related to performance within the State of Maryland. It is alleged that the amount in controversy, as to each of Nelson and Smith, exceeds $10,000, exclusive of interests and costs.

Service was purportedly made upon Victory through the State Department of Assessment and Taxation of the State of Maryland. Victory moved to dismiss on the ground that at the time suit was instituted Victory had ceased to do business in the State of Maryland. The motion was denied by Judge Edward S. Northrop, on the basis of Chief Judge Roszel C. Thomsen's opinion in L'Hereux v. Central American Airways Flying Service, Inc., D.Md.1962, 209 F.Supp. 713, and on the ground of waiver, with both of which opinions this judge is in accord.

Victory then answered, raising as defenses that if there were an agreement as alleged, it was contrary to Article 101, section 52[1] of the Maryland Code of Public General Laws; and that the Union agreement, if executed, was not binding upon it.

1. Section 51 provides in pertinent part as follows:

"No employer or employee who is subject to the provisions of this article shall exempt himself from the burden or waive the benefit of this article by any contract, agreement, rule or regulation, and any such contract, agreement, rule or regulation shall be pro tanto void."

[1] Section 52 relates to "Compromise and Settlement" providing for agreements for final compromise and settlement after a claim for compensation has been filed. It is clear, and is admitted, that reference was intended to section 51.

2. Certainly the employer could provide a health, accident or loss of earnings insurance policy more liberal than the provisions of the Maryland Workmen's Compensation Act; or have its own health, welfare and retirement employment provisions so provide.

[■] The argument in substance is that one of the benefits of Article 101 to the employer is the provision of section 15 that the liability to pay compensation according to the schedules "is exclusive." However, section 51 would not appear to prevent the employer, by agreement independent of, and outside of the provisions of Article 101 from complementing or supplementing the Compensation Act as to the total sums recoverable or receivable.[2]

The dictum, if not the express holding, in Baltimore Transit Company v. Harroll, 1958, 217 Md. 169, 141 A.2d 912, strongly supports the position of Nelson and Smith. In the Harroll case an employee had sought to recover medical and hospital expenses allegedly payable under the terms of a collective bargaining agreement, and prevailed in the lower court. In reversing, the Court of Appeals held that where plaintiff had first received compensation benefits, then settled his claim against the negligent third party, out of which settlement the insurer of the employer had been repaid the compensation, plus the amount of hospital and doctor's bills it had paid plaintiff, he could not recover the hospital and doctor's bills on the theory that such medical care had been furnished under the terms of a collective bargaining agreement. The court said (217 Md. at 177, 141 A.2d at 916):

"We cannot read Article 17 as requiring the company to pay over to an employee the hospital and medical expenses it has received from a tortfeasor. If the parties had so

Victory admits that if either Victory's employment contract, or its agreement with the Union, had provided that in addition to the amounts payable under the compensation act of the particular jurisdiction in which the employee was working, Victory would pay an amount which would make the total paid equal to that payable under the District of Columbia Act, the agreement would be valid. It is because this is classed as "additional compensation in Maryland" that the agreement is alleged to contravene the Maryland Act.

intended and had clearly expressed that intent, they could have agreed that any such expenses recouped by the employer and made his by the statute, must be given by him to the injured employee, but the provisions of Article 17 fall far short of such an agreement, as we read them."

However, the court recognized the validity of the supplementation of benefits under the Act, saying (217 Md. at 173–174, 141 A.2d at 914):

"There are significant indications that Article 17 of the agreement was to complement the compensation act and not to supplement or supplant it in any respect. It would be entirely competent for the parties by express contract to supplement the benefits under the Act or to relax its restrictions or requirements in favor of the employees. 2 Larson, Workmen's Compensation Law, Sec. 97.61; Sharp v. Foley Brothers, Sup., 69 N.Y.S.2d 514."

The Harroll case is construed as follows in 23 M.L.E. Workmen's Compensation § 181:

"Accordingly, as a general rule, an employee may not, by an agreement, waive rights given under the Act, or waive a claim for compensation before the disability takes place. However, it is entirely competent for an employer and an employee by express contract to supplement benefits under the Act or to relax its restrictions or requirements in favor of the employee."

The first defense is accordingly without merit.

2. The Union agreement was signed on behalf of Victory by its Project Manager in charge of Victory's work at the job site in Maryland. It was stipulated that the Vice President and General Counsel of Victory, if a witness, would testify that the signature of the Union agreement was without the knowledge and consent of the officers and directors of Victory; that no resolution was ever passed by the officers or directors of Victory authorizing or ratifying the agreement; that it was the custom for Victory to subcontract work of the type done by Nelson and Smith; that before the contract in question, Victory had never signed any contracts with any "excess compensation benefits" such as the contract in question; and that Victory had always hired only union employees.

It was also stipulated that Victory paid wages to its carpenter-employees (including Nelson and Smith) in accordance with the wage rates in the agreement, which were those prevailing in the District of Columbia and higher than those prevailing at the work site; that Victory made contributions to the Health and Welfare Fund in accordance with Article VII, Section 17 of the Agreement [3]; and that Victory abided by all other working conditions of the agreement.

It was further stipulated that the Project Manager had authority to hire and fire employees at the job site; and that he communicated with officials of the Union for the purpose of employing carpenters on the job and that thereafter Nelson, Smith and other union carpenters were employed on the job.

Since the Project Manager had authority to hire and fire, and since he could hire only union carpenters [4], he would have at least apparent authority to execute the agreement necessary for their employment. Brager v. Levy, 1914, 122 Md. 554, 560, 90 A. 102; 2 Am.Jur. Agency, section 348; 3 Am.Jur.2d, Agency, section 263.

3. This requires the employer to contribute to the Fund 9¢ per hour for each hour worked by an employee represented by the Union. It also provides that employees represented by it will not work for a non-contributing employer.

4. The court perhaps could take judicial notice of this fact. However, it was also so stated by counsel for Nelson and Smith, without challenge or contradiction.

■ Moreover, the payment of wages in accordance with those prescribed in the Union agreement, and the payments into the Union Health and Welfare Fund, in addition to wages, would be waiver, or constitute an estoppel or a ratification (Southern Industries, Inc. v. United States, 9 Cir. 1964, 326 F.2d 221), as to the authority of the Project Manager.

The second defense is accordingly without merit.

The complaint asked for judgment in favor of Nelson for all accrued payments for temporary total, temporary partial and permanent partial disability, and an order that future payments be made to him at the rate of $15.00 per week during the continuance of his permanent partial disability or until the sum of $17,280.00 be paid; and in favor of Smith for all accrued payments for temporary total and permanent partial disability, and an order that future payments be made at the rate of $25.00 per week during the continuance of his permanent partial disability or until the sum of $17,280.00 be paid. The complaint also asks for such other and further relief as may be necessary.

On the question of jurisdiction of the court to entertain a diversity suit where the amounts accrued at the time of bringing the suit, and at the time of trial, were less than the jurisdictional amount, but where the addition of the future weekly sums sought would exceed the $10,000.00 requirement, and on the question of the authority of the court to order the payment of future weekly amounts, Nelson and Smith have filed a memorandum, in which Victory concurs, supporting the jurisdiction of the court, and the authority of the court to order future payments.

■ For the purpose of determining jurisdiction, the total amount of the obligation is determinative, even if there is a possiblity that payments will terminate before the total reaches the jurisdictional minimum. Aetna Casualty Surety Co. v. Flowers, 1947, 330 U.S. 464, 467–468, 67 S.Ct. 798, 91 L.Ed.

1024; Strickland v. W. Horace Williams Company, Inc., 5 Cir. 1956, 230 F.2d 793; cert. den. 1956, 352 U.S. 852, 77 S. Ct. 75, 1 L.Ed.2d 63; Fresquez v. Farnsworth & Chambers Company, Inc., 10 Cir. 1956, 238 F.2d 709, 60 A.L.R.2d 1255; 1 Moore's Federal Practice, section 0.93 [5.1], page 852; see also Horton v. Liberty Mutual Insurance Co., 1961, 367 U.S. 348, 81 S.Ct. 1570, 6 L.Ed. 2d 890; reh. den. 1961, 368 U.S. 870, 82 S.Ct. 24, 7 L.Ed.2d 70.

The question of the right to enter judgment for future weekly payments does not seem to have been directly passed upon, but is implicit in the decisions above cited. It is also within the rationale of Stephenson v. Equitable Life Assurance Society, 4 Cir. 1937, 92 F.2d 406, 410.

The plaintiffs are entitled to the relief requested. The parties may submit an appropriate order or decree within ten days.