CHARLES E. BARRY *vs.* JOHN Z. GOODRICH.

The collector of customs of the port of Boston received money for fines and penalties on account of certain vessels, under the revenue laws of the United States.  A coastwise clerk appointed by him claimed a share thereof as informer.  The collector denied his legal right to be an informer, and refused to allow him anything on that ground; but both the collector and the naval officer from time to time paid him small sums of money, by way of gratuities, on account of these fines and penalties, and finally each paid him a small additional sum which was understood to be in full settlement.  *Held*, that in the absence of proof that the settlement was obtained by fraud the clerk could not thereafter maintain an action against the collector to recover any further sum.

CONTRACT against the collector of customs of the port of Boston to recover a share, claimed by the plaintiff as informer, of money received by the defendant for fines and penalties on account of certain vessels, under the revenue laws of the United States.

At the trial in the superior court, before *Putnam, J.*, without a jury, the following facts appeared:

The plaintiff was coastwise clerk at the custom-house in Boston, while the defendant was collector.  The duties of the plaintiff, as such clerk, were to enter and clear coastwise vessels, keep records of all vessels entered and cleared, send sick seamen to the hospitals, make out seamen's protections, and grant

* See *Combs* v. *Scott*, 12 Allen, 493.

licenses when called for. He received his appointment from the defendant, September 13, 1861, which was approved by the treasury department at Washington in September, 1864. He had an office in the custom-house, a salary the amount of which was fixed by regulation of the treasury department, and kept proper sets of books for recording all his transactions as such clerk.

Under the revenue laws of the United States, there were collected and paid into the treasury department at the custom-house, while the plaintiff acted as such clerk, certain fines and penalties on account of certain vessels, a schedule of which was annexed to the bill of exceptions. The plaintiff claimed, under the revenue laws, one fourth part of the sums so received, on the ground that they were collected and paid in pursuance of information given by him to the defendant. The circumstances under which these fines and penalties were paid, and the services rendered by the plaintiff in relation thereto, were stated in the bill of exceptions, but are now immaterial.

Before the time of bringing this action, to wit, in March and June 1862, and early in 1863, the plaintiff had several interviews with the defendant, in which the question of his right to recover a portion of these fines and penalties, as an informer, was discussed. The defendant always contended, on such occasions, that the plaintiff could not be an informer under the act of congress, and refused to allow him anything on that ground. The defendant, however, as well as the naval officer, paid him from time to time small amounts of money on account of these fines and penalties, but only by way of gratuities, and because the plaintiff claimed he had been of service in the matter and ought to be allowed something. Between the 20th and 24th of August, 1864, the defendant and the naval officer paid him twenty dollars each, which it was understood was to be in full settlement of his said services up to that time. It did not appear that any other consideration than this was given to the plaintiff in settlement of his claim. On the 13th of September 1864, the plaintiff addressed to the defendant a letter, asserting his claim to four hundred and eighty-six dollars, less eighty-one

dollars already received. Immediately upon the receipt of this letter the plaintiff was removed from his office, though the defendant denied that he was so removed by reason of said letter.

The whole of the fines and penalties thus received were distributed by the defendant before the commencement of this action, thus: One half of the fine, in each case, was paid into the treasury of the United States, and the balance distributed between the defendant, the naval officer, and the surveyor, one third to each, according to the provisions of the acts of congress.

Upon these facts, the judge found for the defendant; and the plaintiff alleged exceptions.

*C. L. Woodbury & C. W. Tuttle,* for the plaintiff. 1. The plain tiff relies on U. S. St. 1793, *c.* 8, § 35, distributing forfeitures in like manner as provided in U. S. St. 1790, *c.* 35, § 69. That act directs the distribution by the collector of one quarter to the informer. What constitutes an informer is described in *Sawyer* v. *Steele*, 3 Wash. C. C. 464; *Hooper* v. *Fifty Casks of Brandy*, Daveis, 370; *Brewster* v. *Gelston*, 11 Johns. 390. The fact that the plaintiff was a clerk in the custom-house does not prevent him from being an informer. Any custom-house officer except the collector, naval officer and surveyor may be an informer. See cases above cited; Treasury Regulations, page 467, § 869; Treasury decisions and letters, Sept. 23, 1862, and Oct. 7, 1863. The U. S. Sts. of 1839, *c.* 82, § 3, 1842, *c.* 202, § 12, and 1846, *c.* 7, § 1, do not abolish the right of an officer to be an informer. They only restrict his maximum allowance, and turn his extra allowance into the treasury.

2. The defence of accord and satisfaction is not established. In equity the defendant was a trustee, bound to distribute the fines and penalties received by him according to law. A trustee purchasing trust property at a profit to himself must pay over his gains to the *cestui que use*. 2 Spence Eq. 944. As the defendant had the money of the plaintiff in his hand, a payment of a less sum to Barry does not amount to accord and satisfaction *Harriman* v. *Harriman.* 12 Gray, 341. The implied trust

exists here at law and in equity. The relations between the parties, Barry being a subordinate officer, and being removea on demanding his share in writing, show a coercion altogether foreign from any idea that this was a fair bargain, or that Barry was not compelled, by fear of losing his office, to surrender .to the collector his profits as informer without adequate consideration. The first payments were gratuities. Barry's title the defendant says he acquired by paying him twenty dollars. This amounts to breach of trust and extortion, and was not satisfaction to Barry.

*S. J. Thomas,* for the defendant.

CHAPMAN, J. One of the grounds of defence in this case is accord and satisfaction. Certain penalties were received by the defendant as collector of the port of Boston, and the plaintiff claimed that one fourth of the amount belonged to him as informer. The defendant and the naval officer denied this claim, and contended that the money belonged to them and the surveyor; but they had paid him sums of money from time to time as gratuities, and in August 1864 they each paid him twenty dollars, which was understood to be in full settlement of his services up to that time.

But if the plaintiff was entitled to a part of this money, it was an ascertained and liquidated sum ; and he contends that the payment of a less sum, though agreed to be accepted in full satisfaction, does not discharge the debt. Such is held to be the law, on the ground that the payment of a part of the sum due is not a legal consideration for an agreement to discharge the whole debt. *Harriman* v. *Harriman,* 12 Gray, 341.

The general principle, that an agreement for the creation of a debt must have a good consideration in order to be valid, applies equally to an agreement for the discharge of a debt. But by agreement of parties a thing of very little or even nominal value may be a legal consideration for a contract Even a peppercorn may be sufficient. Accordingly it has been held that the payment of a part of the amount due, by a chattel of trifling value, or by a negotiable security, or on a day before the debt was payable, or at a different place, or upon withdrawal of a plea

or upon settlement of a doubtful and disputed claim, constitutes a good consideration. In *Sibree* v. *Tripp*, 15 M. & W. 23, it is said that the court never inquires whether the consideration is reasonable. Indeed, in modern times there has been an inclination to doubt whether any other consideration than the mere agreement of compromise and its performance ought to have been held to be necessary. These doubts are alluded to in the case of *Harriman* v. *Harriman, ubi supra.* And in *Cooper* v. *Parker*, 14 C. B. 118, Baron Martin remarked that he would be ready to concur in such a judgment as tends to allow parties to contract for themselves what engagement they please; and the other judges concurred in the remark.

If the payment be made by a third person, it is a legal consideration. *Welby* v. *Drake*, 1 C. & P. 557. *Gillett* v. *Whitmarsh*, 8 Q. B. 966. And the same principle would apply to payment of a part of the satisfaction by a third person.

In the present case the claim was disputed, and half the payment was made by the naval officer; and the court are of opinion that the accord and satisfaction was valid.

The plaintiff further contends that if he was not entitled to this share of the penalty it would go to the government, and not to the defendant; and that therefore the defendant held the money as a public officer, and was not at liberty to claim any part of it as his own, or to make a compromise. But the U. S. St. of 1799, *c.* 22, § 91, which seems to be in force in respect to this matter, (see *Ex parte Smith*, U. S. District Court, 1866,) gives the moiety to the collector, naval officer and surveyor, unless some person is entitled to a share as informer. Thus the question of title to the money was exclusively between the plaintiff and these officers, and the government had no interest in it. It was a private matter, which might be settled legally by accord and satisfaction.

It is further contended that the relation of the parties to each other was such that the arrangement ought not to be upheld. It is true that the plaintiff held an office by appointment of the defendant, from which he might be dismissed at the will of the defendant. But though this gave to the defendant a certain

species of influence over the plaintiff, it did not render them incompetent to contract with each other. In the absence of fraud their contracts would be valid, and a compromise of the plaintiff's claim is within this principle. *Exceptions overruled.*