CITY OF BOSTON *vs.* ROXBURY ACTION PROGRAM, INC.,
& others.[1]

No. 05-P-1268.

Suffolk. November 9, 2006. - March 16, 2007.

Present: KANTROWITZ, BROWN, & GREEN, JJ.

*Municipal Corporations,* Acquisition of real estate. *Real Property,* Restrictions, Specific performance. *Practice, Civil,* Statute of limitations. *Limitations, Statute of. Trust,* Resulting trust, Constructive trust.

Although a Land Court judge, in granting summary judgment in favor of the defendants in a property dispute in which the plaintiff city waited nearly thirty years to enforce a contractual promise of one defendant to convey the property to the plaintiff by a certain date if that defendant was unable to obtain a certain governmental commitment for a housing development on the property, incorrectly concluded that the thirty-year statute of limitations in G. L. c. 184, § 23, applied to the plaintiff's claims [472-473], other applicable statutes of limitations nevertheless barred the plaintiff's claims for specific performance [473-474], imposition of a resulting trust [474-475], and imposition of a constructive trust [475].

CIVIL ACTION commenced in the Land Court Department on July 30, 2004.

The case was heard by *Charles W. Trombly,* J., on a motion for summary judgment.

*Elizabeth L. Bostwick* for the plaintiff.

*Robert B. Carpenter (Thomas J. Flannagan* with him) for the defendants.

BROWN, J. The city of Boston (city) commenced this action against Roxbury Action Program, Inc. (RAP), E. Denis Walsh (as trustee of the Rap-Up Nominee Trust), Frederick Massaro, and E&M Realty Corp., seeking to acquire title, free of all mortgages, to the properties located at 6-45 Vale Street and 60

---

[1]E. Denis Walsh, as trustee of the Rap-Up Nominee Trust; Frederick Massaro; and E&M Realty Corp.

Fulda Street in the Roxbury section of Boston (the property). The city seeks to enforce a covenant contained in a recorded document entitled "Instrument of Restriction" in which, among other things, RAP promised to convey the property to the city by July 31, 1974, if RAP was unable to obtain a certain governmental commitment for a housing development on the property. In lieu of answering the complaint, defendants Walsh, Massaro, and E&M Realty Corp. moved for summary judgment on the ground that the thirty-year statute of limitations contained in G. L. c. 184, § 23, bars the city's claims. The Land Court judge agreed and allowed the motion. Judgment entered dismissing the complaint against all four defendants, and the city appeals.[2] While we hold that c. 184, § 23, is not applicable to the issues raised by the complaint, we nonetheless affirm as the city has failed to meet any applicable statute of limitations.

*Background.* We glean the facts from the undisputed submissions of the parties.[3] RAP, a nonprofit corporation, purchased the property on September 27, 1972, from the Fulda Realty Trust for consideration of $45,000. The record suggests that the city provided the purchase monies to RAP through a Federal grant.[4] On March 6, 1973, RAP executed what is entitled an "Instrument of Restriction" (the instrument) on the property

[2]The judgment entered on April 26, 2005, and dismissed the complaint without qualification. Previously, on February 8, 2005, upon the city's motion, RAP had been defaulted under Mass.R.Civ.P. 55(a), 365 Mass. 822 (1974), but no default judgment was entered. We note that, just as RAP did not participate in the Land Court proceedings, it has not appeared or filed a brief in this appeal.

[3]Although defendants Walsh and E&M Realty Corp. moved to strike the city's submission of the instrument and contract central to the issues before the court on grounds of failure to authenticate and hearsay, we note that they also attached the same exhibits to their own summary judgment motion for the "convenience" of the court, incorporating the exhibits in their statement of undisputed facts and relying on the terms of the documents in their written argument on the motion. The defendants have seen fit to provide the agreements to the court and do not contend that the originals vary in any way from what has been provided to the court by all of the parties. We thus treat them as proper parts of the summary judgment record.

[4]Although the record lacks definitive evidence of this point, we agree with the city that the city submitted at least enough evidence to raise a genuine issue of material fact on the issue. For the purposes of summary judgment, therefore, we accept as true the city's assertion that it provided the purchase monies for the property through a Federal grant.

and recorded it on March 9, 1973. The instrument recites that it was created pursuant to a contract between RAP and the city of Boston dated August 1, 1971. Although the instrument makes reference to the contract, there is no language that incorporates the contract into the instrument. The relevant text of the instrument is contained in the margin.[5]

In short, the instrument requires RAP to "reconvey"[6] the property to the city no later than July 31, 1974, in the event that a commitment for a housing development has not been obtained. It is undisputed that RAP never obtained the requisite commitment. It is also undisputed that RAP never conveyed the property to the city pursuant to the terms of the instrument and that no exception was granted. To the contrary, on November 8, 1988, RAP granted a mortgage on the property to defendants E. Denis Walsh and Frederico Massaro to secure the payment of $189,000, and on August 10, 1990, RAP transferred the property

---

[5]"Pursuant to a Contract between [RAP] and the City of Boston, dated August 1, 1971, and amended April 1, 1972, [RAP], a not-for-profit corporation organized under [G. L. c. 180] . . . hereby covenants for itself, its successors and assigns, with respect to [the property], that [RAP], its successors and assigns shall: (a) Devote the aforementioned parcel for housing purposes with such incidental commercial uses and community facilities as are appropriate to it, unless an exception is allowed, in writing, by the Boston Model Cities Administrator or his successor in interest; (b) Not discriminate upon the basis of race, color, religion, sex or national origin in the sale, lease or rental or in the use or occupancy of the aforementioned parcel or any part thereof; and (c) Reconvey the aforementioned parcel to the City of Boston on the last effective date of the aforementioned Contract, as calculated according to the provisions of Article XVI thereof, as amended, which date shall be no later than July 31, 1974, in the event that commitment for a housing development had not been obtained from the United States Department of Housing and Urban Development or the Massachusetts Housing Finance Agency, unless an exception is allowed, in writing, by the Boston Model Cities Administrator or his successor in interest.

"The covenants herein contained shall run with the land . . . and shall be binding to the fullest extent permitted by law and equity for and in its own right. These covenants have been provided to protect the interest of the community and other parties, public and private, against [RAP], its successors and assigns, and every successor in interest to the aforementioned parcel or any part thereof or any interest therein, and any party in possession or occupancy of the aforementioned parcel on any part thereof."

[6]As there is no evidence that the city ever held title to the property at issue, the term "reconvey" appears inaccurate. No issue turns on the use of this term.

to defendant Walsh and Lloyd H. King, as trustees of Rap-Up Nominee Trust. The 1988 mortgage on the property was increased by $50,000 by an amendment dated September 19, 2000, and recorded on January 30, 2002. An additional mortgage on the property was granted to defendant Massaro by an instrument recorded on February 11, 2003. The complaint alleges that E&M Realty now holds the 1988 mortgage.[7]

There is nothing in the record to show that the city made any attempt to compel the conveyance of the property prior to July 22, 2004, when it, by letter, demanded that RAP convey the property to the city. By that time, of course, RAP no longer retained title to the property. On July 30, 2004, the city commenced this action seeking imposition of a resulting trust, imposition of a constructive trust, a determination that the city holds an enforceable option in gross, declaratory relief that the city has equitable title to the property, and specific performance of RAP's duty to convey the property to the city free of any mortgages.

A Land Court judge determined that the housing restriction imposed by the instrument is controlled by the statute of limitations contained in G. L. c. 184, § 23.[8] The judge further found that the "public purpose" exemption contained in § 23 does not apply because RAP purchased the property from a private entity and, although the city provided the funds for the purchase, the conveyance was not a "gift[] or devise[] for public, charitable or religious purposes." The judge concluded that because the city took no steps to enforce the "restrictions" within the thirty-year statute of limitations contained in § 23, summary judgment should enter for the defendants. The judge further found that the shorter statutes of limitations applicable to constructive trusts and resulting trusts bar those claims as well.

[7]Because we determine that the city's claims against RAP fail, it is unnecessary to discuss the relationship between RAP and the Rap-up Nominee Trust and the other defendants.

[8]General Laws c. 184, § 23, as amended by St. 1969, c. 666, § 1, provides as follows: "Conditions or restrictions, unlimited as to time, by which the title or use of real property is affected, shall be limited to the term of thirty years after the date of the deed or other instrument . . . creating them, except in cases of gifts or devises for public, charitable or religious purposes. This section shall not apply to conditions or restrictions . . . contained in a deed, grant or gift of the Commonwealth, or to those having the benefit of [G. L. c. 184, § 32]."

*Discussion.* The relief sought in each count of the city's complaint, regardless of the theory of relief, is the conveyance of the property to the city free of all mortgages. Perhaps because enforcing that portion of the instrument that requires RAP to use the property for housing purposes (section [a]) would not achieve that result, the complaint makes no effort to enforce section (a). Notwithstanding the remedies sought by the city, however, the parties focus on section (a) in arguing that G. L. c. 184, § 23, either applies or does not apply. We think the emphasis on section (a) is misplaced. RAP's failure to use the property for housing purposes, in and of itself, does not trigger the obligation to reconvey the property. As we read the instrument, the city may achieve its goal of a reconveyance of the property only by enforcing section (c) of the instrument.[9]

We thus turn our attention to section (c) and consider first whether G. L. c. 184, § 23, applies to it. We hold that it does not. Even if we were to conclude that RAP's obligation to convey the property to the city constitutes a "condition[] or restriction[]" as those terms are used in § 23, we are not convinced that the condition or restriction is "unlimited as to time." "The word 'unlimited' means without confines, unrestricted, boundless." *Flynn* v. *Caplan*, 234 Mass. 516, 520 (1920) (construing predecessor to G. L. c. 184, § 23). In contrast, the instrument at issue provides a date certain by which RAP must convey the property to the city. When that date arrived without RAP having obtained the requisite commitment or having conveyed the property to the city, RAP was in breach of its obligation, and the city became entitled to enforce an immediate conveyance of the property. Neither the defendants nor the city cite to relevant authority for the proposition that RAP's failure to convey the property on the date set for performance transforms the obligation into one that is unlimited in time. The opinion in *Stop & Shop Supermarket Co.* v. *Urstadt Biddle Properties, Inc.*, 433 Mass. 285, 289-290

---

[9]In the absence of any effort by the city to enforce section (a), we need not decide whether it remains enforceable or, indeed, whether "housing" in fact means low to moderate income housing or whether section (a) otherwise qualifies as serving a public purpose under § 23 or meets the criteria of G. L. c. 184, § 32. Even if section (a) remains an enforceable restriction, it has little bearing on the remedies the city seeks in asking the court to require the defendants to convey the property to the city free of all mortgages.

(2001), wherein the parties amended a deed restriction by removing the fifty-year period of duration, thereby rendering it "unlimited as to time" from the time of the amendment, is inapposite.

Somewhat surprisingly, in an alternative argument the city agrees that the "restriction" is not unlimited as to time and that § 23 and its thirty-year period of limitation do not apply to RAP's obligation under section (c). That § 23 is not applicable to RAP's obligation to convey the property by a date no later than July 31, 1974, however, does not mean that the obligation may be enforced indefinitely. We therefore turn to the specific claims of the city and the applicable statutes of limitations. We conclude that where the city waited nearly thirty years to enforce its rights, it cannot recover under any of its theories.

a. *Specific performance.* This action quite correctly may be considered an effort to enforce specifically RAP's obligation to convey the property to the city. The city's cause of action for specific enforcement accrued at the time RAP committed a breach of the obligation to convey the property to the city, on July 31, 1974. The city contends that its cause of action did not accrue until RAP refused the city's demand to convey the property. RAP's performance, however, was not subject to the city's demand. Rather, the instrument establishes a date for performance, no later than July 31, 1974. The city's cause of action accrued on that date when RAP failed to perform. Whether the action is viewed as one upon a contract under seal, see G. L. c. 260, § 1,[10] or as one for "recovery" of the property, as that term is used in G. L. c. 260, § 31,[11] the applicable period of limitation expired twenty years from the date on which RAP

---

[10]Among other things, that statute requires "[a]ctions upon contracts under seal" to be commenced within twenty years after accrual of the cause of action. G. L. c. 260, § 1. The instrument in question recited, just prior to the signature of RAP's agent, that "[RAP] has caused this instrument to be signed and sealed in its name." The recital was sufficient to create a sealed instrument. See G. L. c. 4, § 9A; *Nalbandian* v. *Hanson Restaurant & Lounge, Inc.,* 369 Mass. 150, 151 n.2 (1975).

[11]Section 31 provides: "No action for the recovery of land shall be commenced by or in behalf of the commonwealth, except within twenty years after its right or title thereto first accrued . . . ; provided, further, that this section shall not bar any action by or on behalf of the commonwealth, or any political subdivision thereof, for the recovery of land or interests in land held

became obliged, and failed, to convey the property to the city. In either event, as of July 31, 1994, the city's claim was time barred.

b. *Resulting trust.* "A resulting trust is based upon the presumption that he who supplies the purchase price intends 'that the property bought shall inure to his own benefit and not that of another, and that the conveyance is taken in the name of another for some incidental reason.' " *Dwyer* v. *Dwyer,* 275 Mass. 490, 494 (1931), quoting from *Quinn* v. *Quinn,* 260 Mass. 494, 501 (1927). On appeal, the city claims that it has an equitable interest in the property via a resulting trust that arose on the date that RAP purchased the property with the government funds furnished by the city.

We are not at all convinced that a resulting trust properly may be imposed in such circumstances as here, where the parties, by contract, comprehensively established the parties' obligations with respect to the property purchased with monies granted to RAP by the city. Compare *Zarum* v. *Brass Mill Materials Corp.,* 334 Mass. 81, 85 (1956). The express requirement of a conveyance to the city in the event that a commitment is not obtained seems to negate a resulting trust theory. We need not dwell on the relative merits of the city's claim, however, because "[t]he applicable statute of limitations for purposes of enforcing a resulting trust is six years." *Stapleton* v. *Macchi,* 401 Mass. 725, 729 (1988), citing G. L. c. 260, § 2. "The cause of action accrues when the plaintiff becomes aware that the trust has been repudiated." *Stapleton* v. *Macchi, supra.* We agree with the Land Court judge that the city's resulting trust claim misses the mark, if for no other reason, because the city failed to bring it within the six-year statute of limitations.

The city argues that the record is unclear as to when it became aware that any such trust had been repudiated. We disagree. If a resulting trust arose because the city provided purchase monies for the property, it cannot be considered separate and apart from the rest of the dealings between the parties, including RAP's obligation to reconvey the property. The city does not deny

for conservation, open space, parks, recreation, water protection, wildlife protection or other public purpose." G. L. c. 260, § 31, as amended by St. 1987, c. 564, § 54.

knowing that on July 31, 1974, RAP had not secured the requisite commitment, transferred the property to the city, or obtained an extension. The city's argument that it had no knowledge of RAP's repudiation is belied by the simple fact that RAP failed to transfer the property on the required date, July 31, 1974. No evidence was offered suggesting that RAP made any statements to the city that it either intended to convey the property as required or would obtain the necessary commitment that could have called into doubt RAP's clear repudiation of any trust. The city's reliance on a single communication regarding a tax issue in 2002, many years after the limitation period had passed, hardly raises a question of fact as to whether RAP had clearly repudiated the trust.

In addition, pursuant to the city's contract with RAP, the city was to be updated monthly on RAP's activities related to the development of the property. The city does not suggest that RAP failed to keep it informed or otherwise concealed the fact that financing had not been secured. Given the express right to information provided to the city through its contract with RAP, the city cannot rely on its failure to make reasonable inquiry as a basis for arguing that it lacked actual knowledge of a repudiation by RAP.

c. *Constructive trust.* While the basis for the city's claim that the defendants hold the property subject to a constructive trust in favor of the city is far from clear, whether it is based on tortious conduct or contractual theories, the applicable three- or six-year statute of limitations also bars the claim. See *Brodeur* v. *American Rexoil Heating Fuel Co.*, 13 Mass. App. Ct. 939, 940-941 (1982). See also G. L. c. 260, §§ 2, 2A.

As it is apparent on the record before us that the city's efforts to acquire title to the property are barred by all applicable statutes of limitations, we affirm the judgment of the Land Court dismissing the action.[12]

*Judgment affirmed.*

---

[12]While the city also claims that the judge erred in striking certain materials from the record, none of the materials would have changed the result. Therefore, any such error was harmless.