SUPERIOR COURT 
 
 MICHAEL GERHARDT AND LAUREN SEAVERNS v. ROBERT S. BURR; COLLEGE STREET PARTNERS, LLC; 140 COMMONWEALTH AVENUE – DANVERS, LLC; AND HAWTHORNE HILL DEVELOPMENT LLC

 
 Docket:
 2184CV01017-BLS2
 
 
 Dates:
 June 5, 2024
 
 
 Present:
 Kenneth W. Salinger
 
 
 County:
 SUFFOLK
 

 
 Keywords:
 DECISION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT
 
 

 Michael Gerhardt and Lauren Seaverns used to work for a real estate development company called College Street Partners LLC, which was owned and managed by Robert Burr. In 2009 and 2011, Burr entered into written Participation Agreements giving Gerhardt and Seaverns economic interests in two projects as partial compensation for their work. Gerhardt and Seaverns claim that Burr breached his obligation under these contracts to pay them a share of any profits that Burr received from either project.[1]
Defendants seek summary judgment on the ground that this action is time- barred. The Court will deny Defendants’ motion because the Participation Agreements for the 140 Commonwealth Avenue and Hawthorne Hill projects were executed under seal, and this action was brought less than 20 years after Gerhardt’s and Seaverns’ claims accrued.
Gerhardt and Seaverns seek partial summary judgment as to Burr’s liability for breach of contract. The Court will allow Plaintiffs’ motion because it is undisputed that Burr stopped distributing profits to Gerhardt and Seaverns once their employment with College Street Partners ended in 2013, Burr’s contractual obligation did not end when Gerhardt and Seaverns stopped working for College Street, and this claim is not barred by waiver or estoppel.
 
--------------------------------------------
 
[1] Burr contracted in July 2009 to pay Gerhardt and Seaverns 10 percent each of the profit distributions he receives from 140 Commonwealth Avenue-Danvers LLC, which owns certain property located at that address. He contracted in September 2011 to pay Gerhardt 10 percent and to pay Seaverns 5 percent of profit distributions from Hawthorne Hill Development, LLC, which owns a skilled nursing facility known as the Hawthorne Hill Rehabilitation Center in Danvers. Burr is the 100 percent owner of both of these LLCs.
 
                                                            -1-
 
1. The Action Is Not Time-Barred. Burr contends that this action for breach of contract is time-barred because it is subject to a six-year limitation period under G.L. c. 260, § 2, this claim accrued in 2013 when Burr said he was going to stop sharing profits, and Plaintiffs did not file this action until 2021.[2]
The Court disagrees. It finds that the Participation Agreements are sealed instruments, and that this claim is therefore subject to a 20-year limitation period under G.L. c. 260, § 1. Each Participation Agreement states, immediately above the signature block, that it was “Executed under seal.” This recital was sufficient to give the agreements the legal effect of a sealed instrument, pursuant to G.L. c. 4, § 9A. See Lawrence H. Oppenheim Co. v. Bloom, 325 Mass. 301, 302 (1950); see also Nalbandian v. Hanson Restaurant & Lounge, Inc., 369 Mass. 150, 151 n.2 (1975) (words “signed and sealed” sufficient); Marine Contractors Co. Inc. v. Hurley, 365 Mass. 280, 285 n.2 (1974) (words “set their hands and seals” sufficient); Glendale Coal Co. v. Nesson, 312 Mass. 293, 294 (1942) (words “witness hand and seal” sufficient). Since the Lease was signed in 2004 under seal, claims for breach of that contract are subject to a twenty year limitations period. See G.L. c. 260, § 1.
Defendants contend that the reference to the agreements being “executed under seal” is not effective because it does not appear until the end of the main body of the contracts, and was not included in the section titled “Recitals” at the beginning of each contract. This argument is unavailing.
Where a contract or other legal instrument states “witness our hands and seals” or contains similar language at the end of the document, just before any signatures, that “is a recital within the meaning of G.L. c. 4, § 9A;” the statute does not require an indication that a contract is being executed under seal to be included in recitals labelled as such at the beginning of the document. Johnson v. Norton Housing Authority, 375 Mass. 192, 194–195 & n.3 (1978); accord Finer v. City of Boston, 334 Mass. 234, 238 & n.2 (1956); City of Boston v. Roxbury Action
 
--------------------------------------------
 
[2] The quasi-contract claims for quantum meruit and unjust enrichment  are subject to the same limitation period as the claims asserting breach of contract formed by consideration or by reasonable reliance. See Suffolk Const. Co. v. Benchmark Mechanical Sys., Inc., 475 Mass. 150, 156 (2016); City of New Bedford v. Lloyd Inv. Associates, Inc., 363 Mass. 112, 118–119 (1973); Kagan v. Levenson,  334 Mass. 100, 103 (1956); see generally Hendrickson v. Sears, 365 Mass. 83, 85 (1974) (“limitation statutes should apply equally to similar facts regardless of the form of proceeding”).
 
                                                            -2-
 
Program, Inc., 68 Mass. App. Ct. 468, 473 n.10 (2007) (recital “just prior to the signature” that instrument was “’signed and sealed’ … was sufficient to create a sealed instrument”).
Defendants also argue that the contracts are not under seal because critical terms (including the participation percentage in each project LLC, and the name of the project LLC addressed by that contract) are included in a separate Schedule A that is attached to each Participation Agreement, the parties separately signed each Schedule A, and those pages say nothing about being under seal. This contention is also without merit.
Each Schedule A is part of a Participation Agreement. It is not a separate contract or instrument. Each Participation Agreement grants either Gerhardt or Seaverns an economic interest in part of Burr’s “Ownership Interest” in a particular “Company.” The first substantive paragraph of each Agreement says that the Company is identified on the attached Schedule. Paragraph 7(h) of each Agreement says that Gerhardt or Seaverns acknowledges that the various representations and warranties set forth in § 7 are true as of the effective date set forth on the attached Schedule. The attached schedules have no independent meaning or legal effect, other than as providing some of the terms of the overall Participation Agreements. That is why each schedule says at the bottom that it is “Schedule A to Participation Agreement.” In sum, each Participation Agreement incorporates and includes the accompanying Schedule A.
The governing statute, G.L. c. 4, § 9A, requires only a single recital that an instrument is sealed or executed under seal in order for the document to “give such instrument the legal effect of a sealed instrument.” Nothing in the statute or in case law applying it requires that a recital that a contract is executed under seal be repeated multiple times merely because the parties have opted to manifest their acceptance of contract terms by signing or initialing the contract in more than one place.
2. Burr’s Liability. The summary judgment record establishes that Burr is liable for breach of contract because he stopped paying Gerhardt and Seaverns their shares of profits from the 140 Commonwealth Avenue and Hawthorne Hill projects after their employment with College Street Partners ended, and College Street stopped doing any business, in 2013.
 
                                                            -3-
 
2.1. The Participation Interests Survived Termination of Employment. The plain language of each Participation Agreement makes clear that Gerhardt’s and Seaverns’ contractual right to Participation Interests in the project LLCs continued in effect after they stopped working for College Street Partners. As a result, Burr’s failure to keep paying over Gerhardt’s and Seaverns’ shares of the project profits constituted a breach of contract.[3]
The Court concludes that the Participation Agreements are unambiguous when considered as a whole, so their meaning is a question of law that the Court may decide on a summary judgment motion.[4] Though the contract language may be hard to parse, that does not make it ambiguous.[5] And the fact that the parties disagree about how to read their contracts does not make them ambiguous either.[6] A contracting party’s subjective understanding of what they thought their agreement provided cannot trump the plain meaning of unambiguous written contract terms.[7]
The Participation Agreements do not have any fixed term, and do not say that they will no longer be effective after Gerhardt or Seaverns stopped working for College Street Partners.
 
--------------------------------------------
 
[3] Since Burr is liable for breach of a contract formed by consideration, there is no need and no basis for the plaintiffs to press their claims in the alternative for breach of a contract formed by reasonable reliance, quantum meruit, or unjust enrichment. Gerhardt and Seaverns state in their memorandum that they will waive these other claims if they obtain partial summary judgment in their favor on the claim for breach of contract in Count I.
[4] See Seaco Ins. Co. v. Barbosa, 435 Mass. 772, 779 (2002); Trustees of Beechwood Village Condominium Trust v. USAlliance Federal Credit Union, 95 Mass. App. Ct. 278, 284–285 (2019). “Whether a contract is ambiguous is also a question of law.” Eigerman v. Putnam Investments, Inc., 450 Mass. 281, 287 (2007).
[5] See Sullivan v. Southland Life Ins. Co., 67 Mass. App. Ct. 439, 443 (2006).
[6] See Indus Partners, LLC v. Intelligroup, Inc., 77 Mass. App. Ct. 793, 795 (2010) (affirming summary judgment).
[7] See, e.g., Eigerman v. Putnam Investments, Inc., 450 Mass. 281, 288 n.8 (2007); (parties’ alleged “practical understanding” of how their agreement should be implemented cannot trump unambiguous contract language); Cody v. Connecticut Gen. Life Ins. Co., 387 Mass. 142, 147 n.9 (2007) (parties’ subjective understanding of contract terms cannot create ambiguity); accord Herson v. New Boston Garden Corp., 40 Mass. App. Ct. 779, 791–792 (1996).
 
                                                            -4-
 
Section 12 provides that Gerhardt or Seaverns would forfeit their contractual Participation Interests, and that their Participation Agreements “shall be automatically terminated,” if they committed a “Bad Boy Act” against Burr, the project LLC, or any affiliate. The term “Bad Boy Act” is limited to intentional fraud or other willful misconduct or willful violation of law. Burr does not contend that either plaintiff did anything to trigger this provision.
The Participation Agreements make clear that these contracts, and the Participation Interests that they grant, continue in effect after Gerhardt and Seaverns stopped working for College Street Partners. Paragraph 4(b) gave Burr the right to purchase the Participation Interests within one year after “the termination of Participant’s employment” with any entity controlled by Burr. If the Participation Interests terminated automatically as soon as Gerhardt or Seaverns stopped working for any of Burr’s companies, there would have been no need and it would have made no sense to create a conditional right for Burr to buy back those interests upon termination of Gerhardt’s or Seaverns’ employment.
In other words, if one were accept Burr’s argument that the Participation Agreements terminated automatically when Gerhardt or Seaverns stopped working for College Street Partners, that would make superfluous the ¶ 4(b) right of repurchase that is triggered when their employment ends. That is not an appropriate way to read an unambiguous business contract. See, e.g., Lieber v. President and Fellows of Harvard College, 488 Mass. 816, 823 n.15 (2022) (“every word and phrase” of contract should be “given meaning, and none is to be rejected as surplusage if any other course is rationally possible”) (quoting Tupper v. Hancock, 319 Mass. 105, 109 (1946)).
Burr’s reliance on one of the contract recital paragraphs, which states that Burr was granting Participation Interests “in exchange for the provision of services” by Gerhardt and Seaverns, is misplaced. This provision merely specifies the consideration that makes each Participation Agreement a binding contract. No rule of law requires that a contract be read so that the rights granted to a contracting party are limited in any way by the nature of the consideration that they provided in exchange. Nominal consideration, such as payment of one dollar or merely handing over a peppercorn, is enough to make a contract binding.[8]  Providing valuable services to Burr’s companies for several years is
 
--------------------------------------------
 
8          See Commonwealth v. Cartwright, 447 Mass. 1015, 1016 (2006) (rescript) (affirming  trespass  conviction  based  on  evidence  that  property previously
 
                                                            -5-
 
more than adequate consideration to make the Participation Agreements binding, without in any was suggesting that the contracts would terminate when Gerhardt’s or Seaverns’ employment ended.
2.2. Parole Evidence May Not Be Considered. Burr insists that he told Gerhardt and Seaverns that: (i) Burr was structing their employment compensation to be part salary (based on oral agreements) and part profit distributions from the two project (as defined in the written Participation Agreements); and (ii) Gerhardt and Seaverns would qualify for profit distributions under the Participation Agreements only so long as they continued to work for College Street Partners. Burr also contends that Gerhardt and Seaverns accepted these oral terms before the parties executed their written Participation Agreements.
The Court finds and concludes that this extrinsic evidence is barred by the parol evidence rule.
Where the parties intend their contract to be a fully integrated document, and the relevant terms of the contract are clear and unambiguous, no extrinsic or parol evidence may be used to contradict, change, or create an ambiguity in the written terms of the contract. General Convention of New Jerusalem in the United States of America, Inc. v. MacKenzie, 449 Mass. 832, 835 (2007) (describing parole evidence rule). This rule applies if and only if court determines “that it has before it a written contract intended by the parties as a statement of their complete agreement.” Sound Techniques, Inc. v. Hoffman, 50 Mass. App. Ct. 425, 429 (2000).
“Whether an agreement is integrated ‘is an issue of fact for the decision of the trial judge, entirely preliminary to any application of the parol evidence rule.’ ” Green v. Harvard Vanguard Med. Associates, Inc., 79 Mass. App. Ct. 1, 9 (2011), quoting Wang Labs., Inc. v. Docktor Pet Centers, Inc., 12 Mass. App. Ct. 213, 219 (1981). “It is ‘a question of fact [that] turns upon the intention of the parties.’ ” Id., quoting Holmes Realty Trust v. Granite City Storage Co., 25 Mass. App. Ct. 272, 275 (1988).
 
--------------------------------------------
 
owned by defendant had been conveyed for one dollar); Barry v. Goodrich, 98 Mass. 335, 338 (1867) (“[B]y agreement of parties a thing of very little or even nominal value may be a legal consideration for a contract. Even a peppercorn may  be  sufficient.”);  Pierce  v.  Fuller,   8   Mass.   223,   228-229   (1811)   (“The consideration of one dollar is in law a valuable consideration.”)
 
                                                            -6-
 
Though the Participation Agreements do not expressly state that they were intended to be fully integrated, an explicit merger or integration clause “is not required” to establish that the parties intended for the written agreement to be a fully integrated document that contains all contract terms and conditions. Steinke v. Sungard Financial Systems, Inc., 121 F.3d 763, 771 n.5 (1st Cir. 1997), quoting Mellon Bank Corp. v. First Union Real Estate Equity & Mortgage Invs., 951 F.2d 1399, 1406 n.6 (3d Cir. 1991); accord, e.g., Home Ins. Co. v. Chicago and Northwestern Transp. Co., 56 F.3d 763, 767 (7th Cir. 1995); Odens Family Properties, LLC v. Twin Cities Stores, Inc., 393 F.Supp.2d 824, 828 (D.Minn. 2005). “The absence of an integration clause … does not necessarily mean that the parties did not intend the contract to be the final and complete expression of their agreement.” Carrow v. Arnold, 2006 WL 3289582, *5 (Del. Ch. Oct. 31, 2006).
“In the absence of a merger clause, as here, the court must determine whether or not there is an integration ‘by reading the writing in light of surrounding circumstances, and by determining whether or not the agreement was one which the parties would ordinarily be expected to embody in the writing.’ ” Braten v. Bankers Trust Co., 456 N.E.2d 802, 805 (N.Y. 1983), quoting Ball v. Grady, 196 N.E. 402, 403 (N.Y. 1935).
It is apparent from the detailed terms of the Participation Agreements that these contracts were intended to be complete statements of the terms of the parties’ profit sharing agreements. The form of the Participation Agreements was carefully crafted by Burr’s attorneys. Each contract is fourteen single- spaced pages long, includes all terms needed to establish an enduring profit- sharing arrangement, and addresses contingencies including, as discussed above, what rights Burr would have if Gerhardt or Seaverns stopped working for his companies. Paragraph 14 emphasizes that the Agreement “shall be binding upon and shall inure to the benefit of Owner and Participant and their respective permitted heirs, executors, representatives, successors and assigns.” That would be an odd thing to emphasize if the parties did not intend for the written Agreements to be complete and fully integrated.
The fact that the parties executed written agreements that include all terms “necessary to constitute a contract” is a strong indication that they “placed the terms of their bargain in this form to prevent misunderstanding and dispute, intending it to be a complete and final statement of the whole transaction.” Realty Finance Holdings, LLC v. KS Shiraz Manager, LLC, 86 Mass. App. Ct. 242, 249 (2014), quoting Glackin v. Bennett, 226 Mass. 316, 319-320 (1917); accord, e.g.,
 
                                                            -7-
 
Berman v. Geller, 325 Mass. 377, 379-380 (1950). Where, as here, parties to an agreement “have reduced a contract to writing, it alone is presumed to express their final conclusions, and all previous and contemporaneous oral discussions or written memoranda are assumed to have been either rejected or merged in it.” Florimond Realty Co. v. Waye, 268 Mass. 475, 479 (1929).
In sum, the Participation Agreements are unambiguous and fully integrated. It follows that Burr may not offer extrinsic or parol evidence in an attempt to create a new contract term that would make superfluous the conditional repurchase right in ¶ 4(b) in the event that Gerhardt’s or Seaverns’ employment was terminated. “When the words of a contract are clear they alone determine the meaning of the contract.” EventMonitor, Inc. v. Leness, 473 Mass. 540, 549 (2016), quoting Merrimack Valley Nat’l Bank v. Baird, 372 Mass. 721, 723 (1977).
2.3. No Waiver. Burr’s argument that Gerhardt and Seaverns waived their rights under the Participating Agreements “by their conduct,” because they did not promptly bring suit in 2013 when Burr announced he would no longer share profits with them after they stopped working for College Street Partners, is without merit.
Waiver occurs when a party intentionally gives up a known right under the contract. See Psychemedics Corp. v. City of Boston, 486 Mass. 724, 745 (2021). “Waiver must be shown clearly, unmistakably, and unequivocally.” Id., quoting Boston v. Labor Relations Comm’n, 48 Mass. App. Ct. 169, 174 (1999).
The fact that Gerhardt and Seaverns did not seek to enforce their contractual rights before 2021 does not constitute a clear, unmistakable, or unequivocal waiver of their right to do so. See generally Dana v. Wildey Sav. Bank, 294 Mass. 462, 467 (1936) (failure to exercise contractual rights immediately does not constitute waiver of other’s party’s breach of contract). As explained in a leading treatise on contract law:
Mere silence, acquiescence, or inactivity is insufficient to show a waiver of contract rights where there is no duty to speak or act Similarly, forbearance to assert or insist upon a right does not, by itself, constitute waiver. A party’s reluctance to terminate a contract upon a breach and its attempts to encourage the breaching party to adhere to its obligation under the contract should not ordinarily lead to a waiver of the innocent party's rights.
15 Richard A. Lord, Williston on Contracts § 39:35 at 653 (4th ed. 2000).
 
                                                            -8-
 
2.4. No Equitable Estoppel. Burr’s similar argument that Gerhardt and Seaverns are equitably estopped from pressing their claims is also unavailing.
The sole basis for the estoppel argument is that Gerhardt and Seaverns did not contradict Burr when he told them in 2013 that their rights under the Participating Agreements would end when they their employment by College Street Partners was terminated, and then waited almost eight years to assert their contract rights. Burr insists that he “would have promptly repurchased Plaintiffs’ interests under Section 4(b)” if he had “known that Plaintiffs believed that the Participation Agreements were still in effect and that they intended to seek continued payments under” these contracts.
This evidence cannot support a finding that Gerhardt and Seaverns should be equitably estopped from pressing their claims for breach of contract.
“Equitable estoppel may be raised where the defendant can prove that he was harmed because the plaintiff’s conduct or representation induced him to do something different from what he otherwise would have done.” Barrow v. Dartmouth House Nursing Home, Inc., 86 Mass. App. Ct. 128, 133 (2014).
To establish the defense of equitable estoppel, a party must show “(1) ‘a representation or conduct amounting to a representation intended to induce a course of conduct on the part of a person to whom the representation is made;’ (2) an act or omission resulting from the representation, whether actual or by conduct, by the person to whom the representation is made;’ and (3)’ detriment to the reliant person as a consequence of the act or omission’ ” (cleaned up). Renovator’s Supply, Inc. v. Sovereign Bank, 72 Mass. App. Ct. 419, 426–427 (2008), quoting Turnpike Motors, Inc. v. Newbury Group, Inc., 413 Mass. 119, 123 (1992).
Burr has not mustered any evidence that Gerhardt of Seaverns made any representation to him, or engaged in conduct amount to a representation, suggesting that they would never exercise their rights under the Participation Agreements. Even if plaintiffs’ silence could somehow constitute a representation, which it cannot, no reasonable factfinder could infer that they made this representation in order to induce Burr not to repurchase their Participating Interests.
Plaintiffs’ failure to press their claim for breach of contract until 2021 cannot support a finding that they are now equitably estopped from doing so. “Silence will give rise to an estoppel only where there is a duty to speak or act.”  Marsh v. S.M.S. Co., 289 Mass. 302, 307 (1935); accord J.H. Gerlach Co. v. Noyes, 251
 
                                                            -9-
 
Mass. 558, 565 (1925). Since the parties agreed by contract that their Participation Agreements were under seal, Gerhardt and Seaverns had no duty to say they disagreed with Burr until 20 years after those claims first accrued.
ORDERS
Plaintiffs’ motion for partial summary judgment as to Robert Burr’s liability for breaching the Participation Agreements, under Count I of their Complaint, is allowed. Defendants’ motion for summary judgment is denied.
A final pre-trial conference will be held on September 5, 2024, at 2:00 p.m. The parties shall file their joint pretrial memorandum by August 29, 2024.